Welcome to the last day of our panel sitting here in beautiful Jacksonville. Before we begin, Judge Chouflette and I want to thank Judge Jeff Beaverstock from the Southern District of Alabama for being here with us. He sat with us on Wednesday and is finishing up his tour of duty today. He serves in Mobile, Alabama, and we're very, very glad that he's here to help us out with our work. We really do appreciate it. You're familiar with our lighting system. When the yellow light goes on, that means that your time is drawing to a close, so begin to wrap up. If we take you beyond the red light, then don't worry, you're on our time and not yours. And with that, we'll begin with our first case, number 17-15714, United States v. Meinrad Kopp. Mr. Kluge. Good morning. May it please the Court. There are a number of factors or errors in this case that I believe call into grave doubt whether the life sentence imposed as to the pharmaceutical researcher, Meinrad Kopp, who engaged in Internet communications from Switzerland. But otherwise... Can you keep the voice up a little bit? Yes. He engaged in Internet communications from Switzerland, where he worked for Merck. He was a person who worked diligently seven days a week in the pharmaceutical industry. Tremendous achievements, some remarkable achievements, including related to Keytruda, which is an important anti-cancer drug. No criminal record, no criminal history whatsoever. But he had issues in his background. His father had so abused his mother that it prevented her from getting health care. And she died when he was nine years old, and then abused him physically. Never claimed to have suffered any sexual abuse, so he has none of that background. But he had, obviously, he had other problems. He had a stroke a couple of years before this incident, a few years before this incident. And something was wrong in his head, and he had certain... Let me cut to the chase, at least for me. I'll tell you what my thoughts are about this case generally, obviously, before hearing from all of you. If this was a case with this one incident being it, I think you could convince me that a variance from ten years to life is substantively unreasonable. But, and I haven't made up my mind, but the but is that the pre-sentence investigation report and the evidence in the case contains information that Mr. Kopp had been involved in similar conduct before, and that he was at the same time contemplating getting involved again with another minor. And so, he starts looking like a serial pedophile. And I think that's what the district judge was thinking about in saying, I'm locking you up for life. I'm not letting you get out and do this again. So, if you could address that issue, I would appreciate it. I'll address it in three ways, if I can. First, just as a theoretical in light of today's, or the events of the day, fear in this area of something that we can't understand and may be harmful can lead to very harsh outcomes. But that does not in any way diminish in our area of the world, the criminal justice area, the duty to pinpoint. While we can be protective in health areas, we have to really pinpoint and be accurate about what we're talking about before we call somebody a recidivist. I want to address this in two ways, because the two factors that are important are the denial of the continuance by the unopposed. Those are separate issues. I would like to talk to you about the substantive unreasonableness claim, and obviously you have other issues, both as to the plea and as to the denial of the continuance. Those are different issues. If you want to address those, you can. I'm trying to make sure that when I address the substantive response that I can make to the court right now on the recidivism issue, that the court keeps in mind that there was a denial of an unopposed motion for continuance by newly appointed counsel, as soon as he was appointed counsel, German-speaking counsel, who could go and review the Swiss evidence, could review the German evidence, could show, could speak to the German police, could speak to the German witnesses where any of this stuff might have happened, and could have developed it and asked, pleaded unopposedly for that extension, for that brief extension, any reasonable extension, and did not get it. But I will go to what I do have. What I do have is there are two points that the district court said, well, he is engaged in prior conduct or related conduct. There's the claim that the defendant said two things to the agent. In other words, there's no actual evidence of anything actually occurring. There's the types of conduct that we know from our business occurs, whether it's the agent or the defendant, is in the nature of puffery. And those two incidents are as follows. The defendant is continually asked by the agent, well, have you done this before? Well, have you done this before? The defendant, sensing that the agent wants to know, he's going to go through with it, says, oh, yeah, yeah, I've got, well, once, 20 years ago, I hit a girl in her groin with a belt. Okay? That's not, and so then what, further, much more does he say, then the next thing he says, well, what else? Are you going to do anything else here? He says, oh, yeah, yeah, I've gotten communications from somebody about a 17-year-old girl. All right, let's take the 17-year-old girl first. When he is seized, he has, at the direction of the government, brought his computer, brought his phones, brought everything with him, all, every bit of evidence. And as I recall, your Honor was on the Rutgerson case, and that was a big issue in the Rutgerson case, is what did you find when you looked at all his computers? What did you find when you looked at his phone? We don't have anything in the record, anything that would support the slightest hint that any of that puffery about, oh, yeah, I was going from Cocoa Beach to some other place and going to meet some, I've been getting communications from somebody, nothing, zero. And the government really doesn't mention that incident at sentencing, and I think probably because if they had, they would have had to admit there's a ton of Brady about it. But again, we don't really know because there's a denial of contingency. We don't have a fully prepared defense counsel. The second incident, A, it's preposterous on its face, it seems to me. It is not even necessarily sexual, and it's some— Of course it's sexual. Well— Because he— It's sadomasochistic. Yes, and that's exactly what he was, part of what he was allegedly trying to do in this case, and one of the things he says to the agent, I don't want to be coarse about it, but one of the things he says to the agent is that he didn't engage in sexual intercourse with that 11-year-old child because hitting her with the belt felt even better. So it is, in a way, sexual. It's—and people who have fetishes, it becomes sexual in that sense if there is a fetish. But I'm saying inherently, it wasn't what we, in this court, day after day, and with the Florida statute that he was charged with violating, continually, day after day, talks about, which is sexual contact. It's not abuse because people do suffer abuse. But the thing— I think you are flat out wrong in saying that that's not sexual abuse. To hit a minor in her private areas is abuse in any way, shape, or form. I don't want to belabor the point because it never happened. It is absurd to— Part of the problem for you is that, I think, that the pre-sentence investigation report lays out his statements to the undercover agent. Those statements are not objected to, and the district court draws factual inferences from the sentencing that he actually did do what he said he did. Judge, that would be, I think it would be an unfair reading from the district court to have done that. I did not see that from the record because the defendant is interviewed immediately after by law enforcement. He gives a full and complete description to law enforcement at which he, as my understanding, he denies that. Then he's interviewed by a psychiatrist soon after his suicide attempt, and he gives a full and complete description. The issue is fully developed by the witness who testifies at sentencing that he completely denied it. The witness who testifies, the expert witness who testifies at sentencing, Dr. Danziger, who the district court himself said is a highly regarded expert, said he found absolutely nothing, nothing to suggest that it had occurred. I think that it was fully litigated. To characterize that as somehow waived, I think that was not well litigated, perhaps one could say, because, again, had we had the opportunity for a continuance to get the full computer access in Germany, the full computer access in Switzerland, we could have gone back for years and years and years, and we could have shown more connections. We could have shown anything. We could have possibly shown to undermine this claim. But, again, factors that you could look at just from the record. When he's asked about it, when the agent, he says it once to the agent in a response to the agent saying, probing him, I want to know you've done this before. Say, oh, yeah, I once hit a girl with a belt. Okay, then the agent comes back to him in the car the second time to reconfirm. He says, what about this girl who was 11? He says, 11? What? Oh, that was a long time ago. Again, classic answers of somebody. But he said that only with respect to saying he didn't have any film of that incident. I did not read it that way. I read him to say there was only one incident. I mean, it's not as if there's only one claim of something. He claims something happened 20 years ago where he hit a girl with a belt. Again. Let me ask you about what I think is a relatively strong argument for you, and that is especially given the sentence that was imposed, denial of the continuance. What did his new attorney say that he wanted to try to find out during the length of the continuance had it been granted? Well, the case, again, everything about this defendant, he had nothing to do with – he arrives in Orlando and is picked up by the agent. That's it. He has no existence in the middle district other than arriving at the airport and what the government does with him thereafter. So that what you have then is you need – if you're going to try to investigate, if you're going to try to be able to convince a district court that this is a human being who is not a pedophile, who in fact every single interaction that you have with him shows that whatever interest he has developed, a serious interest in any of this stuff, happened over the last few months and that there is no history. You can go back forever and ever and ever in his computer. You can go back with police records. You can go back with people he's been involved in. You could actually have investigated him. You could have gone through the German police to see whether they followed up on any of this stuff. And that's – you have an attorney finally who speaks German. And while the defendant, who is a very bright man, can articulate in English, he's not somebody who goes about his day-to-day business speaking in English. He's in Switzerland. They speak French and German. He's a German citizen. He has finally got a German lawyer who can actually not only speak to him fully and get nuances from him as a German speaker, but he can read and understand the German evidence. He can speak to the German witnesses. He can follow up on them. He can actually talk to them about these things. He can fly to Switzerland and spend every last bit of the defendant's pension proving what the defendant swore to unequivocally and got acceptance of responsibility, I might add. There's a tremendous contradiction there. It's absolutely not true. He made that up. There is no such incident of him hitting a girl with a belt. And again, to deny, that was only one aspect of it. The mental health aspect of it was the other. We've let you go over your time. Oh, I'm so sorry. You've saved all of your time for rebuttal. Thank you very much, Mr. Kluge. Good morning, Your Honors. May it please the Court. Todd Grandy appearing on behalf of the United States. Your Honor, I'd like to first address the issue of the earlier incident. I want to start with the continuance first. Okay, Your Honor. I know you're in a difficult position. At least I think you are because the government agreed to a continuance. Yes, Your Honor. Reasonably so below. Yes. The cop was in custody. He wasn't going anywhere. And so the government agreed to the continuance, didn't oppose it. We did. Yet the district court denied it. Yet. What reason did the district court give for denying the continuance, the requested continuance? Well, the district court ultimately determined that Mr. Copp had failed to demonstrate that there was a need. The court noted that this case, the facts of the case were not complex. The justifications for the stay were vague and speculative. And I think ultimately, after the court denied it, it's really important to note what happened. In the six-day period after the court denied the continuance, Mr. Copp's new lawyers filed objections to the PSI. He filed a 21-page sentencing memorandum that exhaustively addressed his various issues. And then a few days after that, he filed a response in opposition to the United States sentencing memorandum. So this case now was... But that's because the lawyer had no choice. Yeah, Your Honor. Yes, I certainly... The court says no continuance. Sentencing is on this date. Of course he's got to file everything. He's got no choice. Well, but... I appreciate what you're saying, but... He rose to the challenge, Your Honor. His sentencing memorandum is 21 pages long. It has voluminous attachments. He did have the benefit of the psychiatric report that Mr. Copp's prior counsel had arranged for. And that report is 13 and a half single-space pages and represents more than six hours and 15 minutes of meetings with Mr. Copp at the prison facility. So his counsel rose... Here's my concern. Yes. The district court, I think, relies significantly on Mr. Copp's statement to the undercover agent about what he did with that 11-year-old girl in the past. That's on page 65 of the sentencing transcript. Yes, Your Honor. I would agree with that. And he says that he believes that Mr. Copp did that. Yes, Your Honor. He says he thinks that's corroborated because he's said it twice and so forth and so on. Why would... And again, I appreciate the position that you're in given that the government didn't oppose the motion below. But why is the request to investigate that incident in Germany or Switzerland not a sufficient reason to grant a limited continuance? Well, Your Honor... It's not like whatever happened in that past incident happened in Georgia or Alabama or Montana or North Dakota or California where you can hop on a plane or talk to people. This is in a different country, in a different language. And it just... It boggles my mind that a district judge is not going to grant a limited continuance in a case where he's contemplating imposing a life sentence, an upward variance from 10 years. I just don't understand what the rush to a sentencing hearing is. And again, I'm not criticizing you or the government because you didn't oppose a motion for a continuance. But you're here defending the judgment. And so the question gets posed to you. I certainly understand that, Your Honor. And my response to that would be additional time to investigate the absence of any... We would agree that Mr. Kopp was never arrested or charged in connection with that 20-year-old incident. So I think it's sort of a misnomer to say that he needed additional time to investigate because we would freely admit that there are no record... There's nothing to substantiate that the incident occurred other than Mr. Kopp's own candidate missions. And in that regard... Did the government have any information about whether that incident was ever even investigated by authorities in Germany or Switzerland? No, Your Honor. One way or another? No, Your Honor. Would it have been relevant if that matter had been investigated and the investigating authorities in Switzerland thought that nothing had happened? Well, I think that would be very, very telling, but... It would be worse. And so why not give... Why wouldn't the district court give Mr. Kopp's lawyer the chance to figure that out? If it turns out that there was nothing, then at the end of the day, then it ends up exactly where it was. The judge finds that he committed this other act with an 11-year-old girl and varies up to life imprisonment, and that's basically the end of the matter. But that's not what we have here. Well, no, Your Honor. What we have here are two things. One, any further investigation, I'm certainly confident, would not have revealed any police reports because there's no evidence that any authorities were ever learned about the incident. How do you know that? Well, there's no evidence in the record of any... Of course there's nothing in the record because he didn't have a chance to go to Germany and you didn't put anything in. Nobody knows. Well, but Your Honor, we also have his own admissions and in that regard, I would encourage this court to review the 40-minute video of Mr. Kopp's conversations with the undercover officer during the ride from the airport to the point of arrest. It's really, really telling and I can even give the court pinpoints to various, particularly inculpatory things he said, but there's no reticence on the part of Mr. Kopp during that 40-minute car ride. There's enthusiasm, there's excitement, there's hand gestures that can only be described as shocking. After the putative 13-year-old called her putative father, the undercover handed the phone to Mr. Kopp, he had a brief conversation with her and after the conversation, Mr. Kopp was smiling ear-to-ear and rubbing his hands in gleeful anticipation. Mr. Kopp's own words and it's important to note that the district court did view that video and based on Mr. Kopp's words, on his facial expressions, on his hand gestures, it comes through loud and clear that Mr. Kopp has been spending the last 20 years trying to recreate an incident that happened 20 years earlier, during which he beat an 11-year-old with a belt while her father held her down and his description of it is being that he was a lucky guy at that time. The video is chilling and again it's approximately 40 minutes but the first 35 are really all that are pertinent but to put yourselves in the shoes of the district court, I think it's imperative that you take the time to watch that video, observe Mr. Kopp's demeanor, observe the way he conducted himself at one point during the conversation when the undercover related to Mr. Kopp, the undercover basically portrayed himself as sort of a novice or sort of a newcomer to S&M so basically during all the various chats, Mr. Kopp led the conversation, the undercover basically allowed Mr. Kopp to think that he was going to learn about these practices and at one point he even said to Mr. Kopp well I don't know if I've done the right thing but I haven't had sex with his daughter in two weeks and Mr. Kopp's response was well it will happen tonight and then what can only be described as remarkable they then engage in a fist pump so I mean the enthusiasm that Mr. Kopp was all in and he had ample opportunity before getting on a plane from New Jersey to Orlando to decide that this was not something he wanted to do but when he got in that car and spent 40 minutes in the car with the undercover officer, his intentions were clear. The other thing I want to address were there if I could interrupt you for a second were there Mr. Kopp communicated with the undercover agent before that car ride over a month and a half your honor were there discussions about that prior incident with the 11 year old during those earlier exchanges or was that the first time that Mr. Kopp mentioned it in the car no no he mentioned it during the conversations I mean the conversations extended over the earlier conversations yes yes and in fact in the car ride the car ride was essentially a reiteration of what Mr. Kopp had said during the course of their month and a half of discussions and I guess attempting to confirm the contours of the encounter to make sure that the undercover was on board with what he had in mind. The other thing I want to make clear is we keep talking about this involving non-sexual sadomasochistic activity but that's not I mean certainly that feature of the encounter that aspect featured prominently but Mr. Kopp had in mind both oral and vaginal penetration which falls squarely within the definition of sexual activity under the pertinent lewd and lascivious Florida statute so he certainly wanted to do things that would not have satisfied the definition of sexual activity including you know parading the girl around the agent's backyard wearing a dog leash but he also had in mind sexual activity including tying the 13-year-old to a bed over the course of a night and raping her repeatedly so the notion that this was not sex or didn't involve sex is ridiculous it involved both I mean extraordinary things that Mr. Kopp wanted to do and he reiterated his plan during the course of the 40-minute drive and just watching his expression, seeing his enthusiasm, seeing his anticipation leaves me with no doubt but that the earlier incident occurred. I didn't want to take all of your time on the continuance issues but I want to give you a chance to go back to where you were trying to start on the sentences. Let me address quickly on the issue of the Mr. Kopp not understanding German his own psychiatric expert noted that Mr. Kopp speaks quote excellent English with a German accent. At the beginning of Mr. Kopp's sentencing hearing his second attorney his second counsel interrupted the district court and said your honor Mr. Kopp does not need a translator he would prefer to listen to the proceedings in English so the notion that Mr. Kopp needed new counsel two weeks before his sentencing hearing at a time when the sentencing hearing had been scheduled for approximately 10 weeks also is not supported by the record and with respect to the substantive reasonableness challenge it's not easy to find a comparator because thankfully there aren't too many cases involving child enticement and sadomasochism but another one that I think bears a striking resemblance to this case is one that I handled 10 years ago and that's United States vs. Freelander and in that case it involved a similar scenario in which an undercover posed as the father of two young boys 10 and 11 years old and during the course of a series of communications agreed to an encounter that would have involved stripping, binding, beating and sexually assaulting the two children and like this case it also involved traveling there the defendant traveled from his home in Sarasota to St. Pete to meet up with the officer here, Mr. Kopp traveled from Switzerland for a conference in New Jersey for a week and then after that conference flew to Orlando for what he hoped would be a weekend encounter with a 13 year old and in that case this court affirmed as substantively reasonable they didn't even say not unreasonable, this court said that a 360 month sentence was substantively reasonable and it's a guideline range in that case if you recall that represented a mid-level guideline range sentence that's the one and I'm not saying it's dispositive but that's the one difference here is that this is a variance well above the advisory guideline range which was the mandatory minimum the variance was from 10 years to life and I think you're right that there is no comparator case anywhere else in the country with this general set of facts or this extent of a variance. Yes, Your Honor but in that case the reason for the higher guideline range really was because of the narrative the undercover had told the defendant and that is there the victims were 10 and 11 rather than 13 and that made a difference because the victims were under the age of 12 and 8 level specific offense characteristic applied also because there was in that case two victims rather than one that bumped up his guidelines range so really the driving force for Mr. Friedlander's guidelines range was the narrative that the undercover had created during the course of his conversations with the defendant so here the 13 year old easily could have been 11 and Mr. Copp could have found himself in a very simple and even though there was only one punitive victim Mr. Copp could have found himself in the same type of position but as far as the conduct goes they are strikingly similar. They both involve undercovers they both involve notional victims they both involve shocking sadomasochistic behavior For me the question is not whether or not an upward variance was appropriate. I think it was The question is whether this extent of an upward variance was I understand your honor and with respect to Mr. Friedlander he was 79 at the time of sentencing so his sentence effectively is a life sentence and in fact his compassionate release proceeding is currently pending before this court. I just responded to his brief about a month ago so here really the facts are strikingly similar and the narrative is what changed the guidelines range In my view the conduct is one in the same. Thank you very much Thank you your honors Let me just go first to the Friedlander case I addressed it in my reply brief but I think a fair statement about Friedlander is not just that it was a sentence in the middle of the guideline range it was that he was convicted by jury twice he went to trial twice lost twice. He never had any remorse for his conduct much less accepted responsibility as found by the district court in this case for Mr. intended to commit offenses as to a 10 and 11 year old boys and his computer records Aha! Computer records showed that he had committed the offense on multiple occasions without police solicitation Friedlander is not only showing that it's substantively unreasonable but it's hammering down the point that we needed the continuance. It wasn't 10 weeks between the plea it was not 10 weeks between the suicide and the plea either. This is a defendant committed suicide one month after getting here. As soon as they could wheel him into court essentially he's given a plea as soon as he can possibly find he's completely isolated from wherever any connection. He has no connection here as soon as he can find a German speaking lawyer he hires one. The man immediately asks for a continuance. It's unopposed the government recognizes it. It should be unopposed and the point of the continuance is to show that it's not the continuance to show is that this guy had a stroke that this guy had all kinds of weird history but that he is not that kind of guy. He's a guy who has he is a guy with a tremendous mitigation record which is never really fully addressed by the district court at all There's never been a defendant like this. I don't think I've ever represented a defendant with this kind of mitigation record. An entire record free criminal record free life of tremendous contributions to the entire human race and again coming back to the events of today what is more important than great pharmaceutical research it's a tremendous benefit clearly it is every reason to believe this sentence was unnecessarily severe. He has a relatively short life expectancy but again the continuance was essential he is a very smart person I speak German myself because I'm smart not because I'm good at German that's it he could not effectively communicate and I cannot effectively communicate with him. I'm not trying to introduce other facts to the record but he hires a German lawyer for a reason and when the German evidence is coming in and the government uses the German evidence the council objects to the German evidence it's sentencing and the district court doesn't even rule on whether he's considering it What do you mean the lawyer objected at sentencing I thought he didn't have any factual objections to what was related in the pre-sentence investigation report He did at sentencing object to consideration of the German evidence. He said we have no idea how they got this, we have no idea what's going on with this, we have no extent of it we haven't been able to look at any of this all we have is a report from the German, from Switzerland that has had, that confirmed the charges in this case and again the government, I don't know what you mean by German evidence, I'm not German, I'm sorry Swiss, I'm sorry I'm sorry, the court instructed the prosecutor to rephrase the question did it not? I believe he did but there is signs to me in the record that the district court it's just not what is supposed to Rule 32, you're supposed to actually make a finding, are you relying on this matter or are you not? And so I think it is a further indication that this problem with the Swiss evidence But then the district court outlined the facts and the factors that he was relying on in sentencing and it did not include the Swiss evidence No, but again from my standpoint it reflected this absolute belief that there were victims He had, the district court had come to the conclusion, whether the power of Mr. Kopp's performance on the video or what, I don't know what it is but had come to this completely erroneous conclusion that this man had ever heard anybody in his whole life Go ahead, I'm sorry But I would say, I think the judge articulated on the record the reasons that he came to that conclusion. The word heinous is the conclusion, the reason he did but that again, failed to deal with what this court requires, which is to consider the balancing factors, consider the mitigation and again, going back to this Friedlander argument this is not something that's just not comparable to anything that happened in this district This is not comparable to anything that's happened anywhere in the United States The guidelines were 6 to 8 years. They were raised to 10 years by the statutory maximum The defendant had absolutely no record, but for whatever interaction that the agent got with a fist bump about things to confirm the guilt of this offense which this defendant admitted there was nothing, nothing to support that he had ever hurt anybody sexually or otherwise his whole life and the defense in this case, of all cases, with the suicide, with all of the other factors in this case merited a continuance I'd ask the court to grant relief on that basis Thank you both very much ... ...   ... ... ... ... ... ... ... ... ... Lawyers for the second case ... ... Take your time to set up But I'll call the case number  ... ... ... ... ... ... ... ... ...     ... ... ... ... ... ... ... ... ... ...